Next case on the count is United States v. Ray All right. We have Ms. Shevitz. Can you hear me okay? Yes, I can. All right. I see you reserve two minutes for rebuttal and you can begin whenever you're ready. Thank you, your It's a very unusual case that was highly sensationalized. I want to touch on two, three points that we make in our brief. The first being sex trafficking, not meeting the definitions of the statute. The second one being RICO, not meeting the definitions of the statute. And the supposed expert who testified way too long about things that the witnesses testified to. Starting with sex trafficking, again, not a usual case. The press sensationalized it and talked about sex, and there was a lot of sex in this case. But there was only one person who was supposedly sex trafficked, and that was Claudia. None of the verbs in the statute, which are set forth in our brief at page 64 to 65 to 66, apply to what Lawrence Ray did with respect to Claudia in this case. We show just each of the verbs, why it doesn't apply, but the government came back and it says that two verbs apply, and that is recruit or maintain. So they would say that Lawrence Ray recruited someone, Claudia, by extortion, it means, or threats, to commit acts of commercial sex by extortion and threats. In our reply brief, we discuss why those concepts do not fit this crime either. At page 3 and 4 of the reply brief, we discuss the verb maintain, which is the chief verb the government seizes on to argue that this case is governed by the sex trafficking statute. None of those verbs fit what happened with Claudia here. Claudia set up her own prostitution business years before, years ago. For many years, she carried out her own prostitution business, which she said she loved. She was not recruited by Larry Ray. He, quote, suggested it, that she did not support it. She did her own advertising. She got her own johns. And she kept her books. She did what she wanted to do. I don't understand this, Ms. Chapman, so let me interrupt you. On this issue, let's just focus on maintain for a minute. Her testimony was that he threatened her, blackmailed her, beat her. So why isn't that a jury could decide that her testimony, however it started, that it was maintained through those means so that she would continue to do it and he could reap the proceeds of it? Why isn't that exactly what the jury could have found here? Because that definition of the statute would be redundant. As we discuss at page four and five of the reply brief, the statute would read with that, whoever knowingly, in or affecting interstate commerce, maintains, that is, keeps in an existing state of prostitution by threats and coercion, knowing or in disregard of the fact that means of threats or force or coercion will cause the person to create, to engage in commercial sex act. That is redundant. The mens rea there is the same as the act. And that can't be the case in the statute. It's our position. You only have a few minutes left. I wanted to focus on the expert. I'm worried that's your third point. I'm going to get to it. The government cites numerous cases from other circuits, 5th Circuit, 7th Circuit, 9th Circuit, 10th Circuit, that have all allowed this type of expert testimony. One of your main arguments, I hear you're saying it went on too long, but putting aside the length of it, I think your argument was that this is not beyond the ken of a juror, that they don't have expert testimony in this. But all those courts have concluded otherwise. District courts in our circuit have concluded otherwise. And I would like you to explain why where an expert is testifying about grooming and psychological techniques, that course of conduct towards the victim, to help explain why the victim then might do things that are counterintuitive, like not contact law enforcement, not falsely confess to something, why they might do those things in response to those techniques. Isn't that something that jurors don't really have an understanding of? Assuming that that is true, we are going to go with the second part of our argument on the expertise, which is that the testimony mirrored alleged victims improperly bolstering their credibility to an extent not seen in any prior cases. The expert could have said people act against their own interests when they are groomed, or we don't think the word groom applies to these adults. But her characterizations, the expert's characterizations here, and expressions of personal revulsion were too inflammatory and usurped the jury's function in evaluating the credibility. Well, she made no reference to any of the victims in this case, right? She didn't reference any particular conduct with respect to any of the victims in this case, and that's the type of testimony that we have previously suggested is improper bolstering. But simply she describes certain techniques, and then the witnesses testify about those techniques. That's exactly why her testimony is relevant, because the government is putting on evidence that those techniques were used. So that's not improper bolstering. It's only improper bolstering if she starts analyzing particular evidence in the case, and she strictly did not do that. Well, she did, in a way. She talked about how it's, quote, she also advocated about how coercive control is achieved. Discussed at our brief at 26 to 27, she said, it is insidious. We're trying to desensitize the victim. We're trying to get them closer to this sort of line of deviance when they're going to do more full exploitation. And she continued in a way that's never been sanctioned of an expert by this court, especially a blind one. She said the perpetrator is usually very cunning about explaining away some of the little behaviors, but the more it happens, and then by the time you're at sort of this, you know, DEFCON 1, there's nothing left, and you're suffocating, and you don't know how to get out. Now, she didn't say that she spoke to the witnesses, the witness victims, but the government did, knew who the victims were, and prepared her to testify in a way that they knew that the witnesses would testify specifically. All right. Your time is up, Ms. Shevitz, but you have two minutes. If you want to cover the other point, you can do that in the final. All right? Thank you. Thank you. We'll hear from the government. May it please the court, Danielle Sassoon for the United States on Appeal, and I represented the government at trial. At that trial, the government presented overwhelming evidence that Larry Ray operated an enterprise for about a decade that extorted its victims, sex trafficked Claudia Drury, forced its victims to perform grueling manual labor, and committed a number of other crimes that resulted in 15 felony convictions here. Among that overwhelming evidence was the expert testimony of Dr. Don Hughes, and so I'd like to begin there. Judge Bianco, you're correct that numerous circuits have permitted exactly this type of testimony. I'd also like to highlight this court's recent decision in Rivera. Now, that was a summary order, but in that case, the circuit held that expert testimony about trauma bonding between a pimp and the women that he was sex trafficking was appropriate expert testimony, that it provided helpful information for the jury to understand the psychological concepts at play, and it specifically rejected this argument about impermissible bolstering where, like here, the expert was a blind expert who did not interview the victims, knew nothing about the evidence in the case, and was instead talking about typical conduct of abusers and typical effects on victims, and it cited favorably the Eighth Circuit, which has a more extended analysis in a published decision. Do you agree, though, that in some circumstances, the mirroring might be so close that one might infer that the government had, with all good reasons, but prepared the witness to speak about generic cases in a way that really very closely tracked what the victim witnesses would provide, and so that the jury might reasonably understand it to be the expert who had commented on the victims themselves, or on the perpetrator, for that matter? The case law recognizes that even if the inference is very obvious, if that inference is left for the jury to assess victim credibility, then that is okay. And here, we certainly don't have a situation of cherry picking or adapting an expert testimony to the facts of the case. Dawn Hughes had decades of experience. She was board certified as a forensic psychologist. She was a professor at Weill Cornell. She treated thousands of patients. There was no reason to suspect that there was anything here other than an alignment of her testimony with the victims because they were credible and because she was describing common patterns of coercive control that Larry Ray did, in fact, exercise in this case. And with respect to this idea that there was certain inflammatory testimony or that she was commenting on Larry Ray's intent, there were no specific objections to that testimony, and so it would be reviewed for plain error. But under the Supreme Court's recent decision in Diaz, appellant cannot show plain error. In Diaz, the expert there actually testified that most people of a certain type, most drug couriers, have a certain intent. And even there, the Supreme Court said that that was permissible testimony because the expert was not opining about the state of mind of the defendant himself. And here, even in the defense closing, they acknowledge that Don Hughes said nothing about Larry Ray's intent or Larry Ray's use of coercive control in this case. And of course, even if there were error here, which there was not, any error would be harmless in light of the overwhelming evidence, including the testimony of five victims who were credible, corroborated one another, and who were corroborated in their description of this heinous abuse by things like video and audio recording. Could you also address the appellant's argument that there was insufficient evidence of RICO conspiracy because the enterprise was comprised of Ray alone and that Ray was a one-man show? Yes, the jury rejected that, and there was plenty of evidence for them to draw the opposite inference, especially taking the evidence in the light most favorable to the government here. The government presented overwhelming proof that although Ray was the leader of the enterprise, he had multiple co-conspirators, among them Isabella Pollack, who was his right-hand woman, including in the extortion and the sex trafficking. And taking just the example of the October 16, 2018 assault at the Gregory Hotel, cell site evidence showed that Isabella Pollack was there. As Claudia Drury testified, Larry Ray and Isabella Pollack came to her hotel room. They had her stripped naked, tied her to a chair. Isabella Pollack provided Larry Ray with a plastic bag that he used to suffocate Claudia Drury over and over throughout a night of torture. She recorded a portion of that torture, which was introduced into evidence. It was Government Exhibit 1709. And then there were text messages between Claudia and Isabella the following day, where Isabella arranged to pick up proceeds from Claudia seeing additional clients after Larry Ray had told her that night to behave and focus on work. So that evidence alone refutes this idea that it was an enterprise of one. Yes, and I'll touch briefly on the sex trafficking. Judge Bianco, you're absolutely right that the jury could have found either that Claudia Drury was coerced to begin prostitution in the first place given the long campaign of physical and psychological abuse and the false confessions and the threats. This idea that Claudia Drury liked it and wanted to be a prostitute was made below, and of course the jury rejected that ludicrous suggestion. As Claudia testified, she felt like she had no option. She had been made to feel like a criminal and that she owed Larry Ray millions of dollars and saw this as her only way out while she was suffering violence and psychological abuse. And of course, as the judge instructed the jury, which is not challenged on appeal, the government did not have to prove that throughout the entire period that she was doing this because of force or coercion. All the jury had to find was that even on one occasion she was doing it against her will, and that October 16th, 2018 assault at the Gregory Hotel alone is enough to prove that Claudia Drury was sex trafficked by Larry Ray and that he conspired to do it with Isabel Pollack. Unless the court has any further questions, we'll rest on our brief. All right, thank you. Ms. Shevitz, you have two minutes in revote. Judge Carney beat me to the punch on the RICO issue, but I wanted to say that the major problem with this RICO prosecution is, although there was unity of action between Isabella, let's say, and Larry Ray, that does not make an enterprise. An enterprise, usually it's the pattern of racketeering activity that gets challenged. Here, I challenge the nature of the enterprise, the existence of the enterprise. The enterprise, as our brief at 43 to 48 discusses, there was no shared criminal purpose beyond a reasonable doubt. If the expert, Hughes, is to believe Isabella and the rest of the people in that group had no independent volition, some independent volition. Why did the jury have to agree with that? I mean, I understand why you would argue that to the jury. But why did the jury have to believe that? I don't have to believe what, Your Honor? That Isabella had no volition. I don't understand why that is a legally required conclusion. Why did the jury have to conclude that? The jury didn't have to conclude that for, it wasn't argued specifically by the defense attorney with regard to the enterprise. But with regard to the substantive acts, Isabella was not on trial. That was one of the problems. Why is that a problem? You can't try one defendant? You can't separate their cases? Sure you can. So what's the problem? The problem is that the enterprise, let me talk about a different point too. The problem is that although the experts said that and the other evidence showed that Isabella was under Larry Gray's thumb. So the other problem, though, is besides shared purpose, the enterprise has to exist in interstate commerce. And according to this court's decisions, which we suggest are erroneous, it has to exist and not just be agreed to be formed. We discussed that in the brief. But the evidence does not show that it existed and that it was interstate commerce or that any of the people involved in it, Larry Ray's father, Isabella, whoever else the government contends was a member of the enterprise. When did they agree to form an enterprise that would affect commerce through a pattern of racketeering activity? When did they agree? The time is up, so we're going to stop at this point. But thank you very much, and thanks to the government. We'll reserve decision, and have a good day.